IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

**ENTERED**
**03/31/2008**

|                          |   |                         |
|--------------------------|---|-------------------------|
| IN RE                    | ) |                         |
|                          | ) |                         |
| JAMES CLINTON ROLLINGS,  | ) | CASE NO. 04-31511-H3-7  |
|                          | ) |                         |
| Debtor                   | ) |                         |
|                          | ) |                         |

<u>MEMORANDUM OPINION</u>

The court heard the "Debtor's Motion For Sanctions For (1) Filing And Maintaining An Adversary For A Party Without Standing; (2) Improper Discovery Request Making Litigation Unduly Burdensome And Expensive; And (3) Filing A Motion Without Basis Or Support Of Law, And For Improper Purpose" (Docket No. 120) against Rex-Tech International, LLC ("Rex-Tech"), RI Collections, LLC ("RI Collections"), James Petersen, Jr., Daniel McKay, Raymond Krell, and Christian Sternat (collectively referred to as "Respondents"). After consideration of the Response filed thereto, the dockets and files in the above captioned matter and its related adversary proceedings, the evidence, and argument of counsel, the court makes the following Findings of Fact and Conclusions of Law. A separate conforming Judgment will be entered. To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such. To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

<u>Findings of Fact</u>

Debtor's motion for sanctions arises out of Respondents' actions in Debtor's main case bankruptcy proceeding and Adversary Proceeding No. 04-3718, a complaint filed by Rex-Tech to determine dischargeability and objection to discharge. Debtor asserts that during the main case bankruptcy proceeding, Respondents made discovery requests which resulted in increased litigation and costs, and were designed to harass and financially ruin Debtor.

Debtor also contends that Respondents filed and pursued Adversary No. 04-3718 knowing that Rex-Tech, the adversary plaintiff, lacked standing and was not the real party in interest.  Debtor further claims that after completion of the trial in this adversary proceeding, Respondents filed a Motion To Present Newly Discovered Evidence and for Reconsideration, without any factual evidentiary support or legal basis.  Debtor claims that these actions were filed for the improper purposes of harassment, unnecessary delay, and needlessly increasing the cost of litigation.

The parties in this proceeding have a long history of dealing with one another, most of which has been highly contentious and adversarial.  Rex-Tech International, LLC  was formed in December, 1998.  It is and from its inception has been owned 70% by James E. Petersen, Jr. ("Petersen") and 30% by Leonard Timothy Rexroad ("Rexroad") using funding by James E.

2

Petersen, Sr.   Rexroad was the president and chief operating officer of Rex-Tech.

On December 11, 1998, Rex-Tech pledged all of its assets to Riva Services, LLC ("Riva").   Riva was initially owned by James E. Petersen, Sr. (now deceased) but is currently owned by the "James E. Petersen, Sr. Living Trust."   James E. Petersen, Jr. is the son of James E. Petersen, Sr. and a beneficiary of the Living Trust, as well as a Respondent herein.

Debtor was hired to work for Rex-Tech by Rexroad and began as a mechanic, on a contract basis, about June or August 1999.   Debtor became a permanent employee about October, 1999 as the shop supervisor.   Thereafter, Debtor served as the plant manager for Rex-Tech for about three years.   In mid-2002, Debtor became the quality control manager.

On June 30, 2003, Petersen, Sr., on behalf of Riva advised Rex-Tech by letter of his intention to call the promissory note which provided the funding for the establishment of Rex-Tech.   Sometime in June 2003, Rexroad's employment with Rex-Tech was terminated.

On July 8, 2003, Powertuff Corporation and Powertuff Rig Parts, L.L.C. ("Powertuff") sued Rex-Tech in the 55th Judicial District Court of Harris County, Texas, Cause No. 2003-38112 (hereinafter referred to as "State Court Litigation"), to collect on a sworn account.   RexTech terminated Debtor in August 2003.   On or about September 19, 2003, Rex-Tech filed a

3

counterclaim and third-party complaint against Debtor and others asserting that they engaged in a conspiracy to financially ruin Rex-Tech.  Raymond Krell and Daniel McKay are the attorneys of record for Rex-Tech, Riva, and RI Collections in the State Court Litigation.

Riva foreclosed on Rex-Tech on October 22, 2003 and sold all of Rex-Tech's assets to itself for one million dollars. On March 25, 2004, Riva, represented by Petersen, Sr., assigned all of its rights obtained through the Rex-Tech foreclosure, including causes of action in the state court litigation, to RI Collections.  The Assignment was made retroactive to October 22, 2003.  RI Collections was not formed until November 2003.

Krell is an attorney and has been involved extensively with the Petersen family and the various companies and entities in which Petersen, Sr. had an interest.  He testified that currently he is the managing executive of all the entities that were owned by Petersen, Sr.  Krell appears as the registered agent of a large number of Petersen companies.  Debtor's Exhibit No. 10.  Krell testified that the Petersen, Sr. Living Trust owns Riva and that Riva owns RI Collections.

Debtor filed a voluntary chapter 13 proceeding on January 31, 2004, and converted his case to a chapter 7 proceeding on June 14, 2004.  Christian Sternat is counsel of record for Rex-Tech and RI Collections in Debtor's main case bankruptcy proceeding and the related adversary proceedings.

Krell testified that he did not hire Christian Sternat.  He testified that Sternat had done some bankruptcy work for Petersen, Sr. in years past.  Krell testified that he "conveyed" the hiring of Sternat from Petersen, Sr., who, he said, was acting on behalf of Riva.  Sternat was hired to represent the Petersen entities and to protect their interests in Debtor's bankruptcy proceeding.

Upon his filing bankruptcy, the allegations against Debtor in the State Court Litigation were severed and continued under Cause No. 2003-38112A.  On December 23, 2004, this court lifted the automatic stay to allow the State Court Litigation to proceed.

Debtor has been involved in a dispute with Rex-Tech, RI Collections, Riva and the Petersen family for almost five years. Rex-Tech, RI Collections, Riva and the Petersen family have pursued the dispute in the State Court Litigation and in this bankruptcy court in a continuously aggressive manner, with a multiplicity of pleadings.  The State Court Litigation is still ongoing.  Extensive discovery has been conducted in both courts.

In the State Court Litigation, On December 8, 2003 and December 16, 2003, Debtor responded to Rex-Tech's Request for Disclosure and Rex-Tech's First Set of Interrogatories and Request for Production, respectively.  On April 6, 2005, a protective order was entered on behalf of Debtor in the State Court Litigation.  The State Court ordered that no discovery was

to be conducted against Debtor without leave of court.   Debtor's
Exhibit No. 14.   However, the evidence reflects that "A Request
for Records," "Direct Questions," "Subpoena Duces Tecum," and
"Notice of Intention to Take Deposition Upon Written Questions"
was issued on April 11, 2007 to Debtor by Krell and McKay in the
State Court Litigation.   Debtor's Exhibit No. 38.

Justin Renshaw, Debtor's attorney in the State Court
Litigation, testified that he has represented Debtor in that
proceeding since 2004.   Renshaw has been practicing law since
1999.   He testified that he has several file cabinets full of
documents related to the State Court Litigation.   Renshaw
testified that he requested and the State Court issued a
protective order, on behalf of Debtor, staying discovery in the
State Court Litigation without leave of that court.   Debtor's
Exhibit No. 37.   As of November 2007, his attorney's fees for
representing the Debtor in the State Court Litigation have
exceeded $60,000 and the case has not yet been tried.   Renshaw
testified that the April 11, 2007 state court discovery was
served on Debtor directly and not on Renshaw as counsel of
record.   He testified that discovery is generally served on one's
counsel of record.   Renshaw considered the April 11, 2007
discovery to have been initiated for harassment purposes only.
The court found Renshaw to be a credible witness.

After filing his chapter 13 petition, Debtor attended
his Chapter 13 creditors' meeting on March 25, 2004, making

himself available for questioning by creditors.  After Debtor's
main case bankruptcy proceeding was converted to a chapter 7,
Debtor attended his Chapter 7 creditors' meeting on July 22,
2004, again available for questioning by creditors.  In addition,
on September 8, 2004, Rex-Tech, through its counsel of record,
Sternat, conducted a 2004 examination of the Debtor which lasted
approximately eight hours.

On September 20, 2004, Rex-Tech filed a Complaint to
Determine Dischargeability and Objection to Discharge, Adversary
Proceeding No. 04-3718, against Debtor.  Sternat is listed as
counsel of record for Rex-Tech and Krell is listed as the contact
for Rex-Tech with the mailing address of his firm, Krell &
Torigian.  On September 21, 2004, Rex-Tech conducted a second
Rule 2004 examination of Debtor for approximately five hours.  On
October 15, 2004, Rex-Tech conducted a third Rule 2004
examination of Debtor, lasting over four hours.  The discovery
deadline expired on March 19, 2005.  Trial commenced on this
adversary proceeding in July 2005.

On May 18, 2005, Rex-Tech filed Adversary No. 05-3358
requesting the court to order Debtor to produce documentation of
ownership and to issue a declaratory judgment against Debtor in
connection with the ownership of a piece of equipment located on
the premises of Rex-Tech.  The court notes that Rex-Tech made no
allegations that it owned the property.  In connection with that
adversary proceeding, Rex-Tech propounded interrogatories,

7

requests for production and admissions to Debtor which he responded to on August 17, 2005.

On November 29, 2005, Rex-Tech and RI Collections served another set of interrogatories and requests for production on Debtor; this set was in Debtor's main case bankruptcy proceeding. This discovery request consisted of nine expansive interrogatories and thirty-six requests for production of documents. Debtor filed a motion for protective order and requested relief from the court to deter such further conduct. Debtor's Exhibit No. 19.

The court granted the motion and relieved Debtor from responding to the discovery request and prohibited any further discovery of any kind in the main case bankruptcy proceeding, Adversary No. 04-3718, and Adversary No. 05-3358, without further court order. Debtor's Exhibit No. 20. Rex-Tech filed a Motion To Reconsider the court's protective order. Debtor responded and Rex-Tech filed a Reply. The court denied reconsideration. Debtor's Exhibit Nos. 21 - 24. Debtor seeks sanctions against Respondents, in the instant motion, for having to seek a protective order in connection with this discovery request.

Sternat testified that he signed this discovery request and that he drafted it with the assistance of McKay (one of the attorneys representing Rex-Tech, Riva and RI Collections in the State Court Litigation). Sternat testified that the discovery requests were to obtain information about the estate's assets so

that the assets could be preserved.  He testified that at the
time the discovery was filed, he still did not know what assets
or receivables belonged to the estate nor did he know the
location.

The court does not find Sternat's explanation plausible
in light of the evidence.  The record reflects that since 2003
Debtor has been continuously bombarded with discovery initiated
by the Respondents in the State Court Litigation and in the
bankruptcy proceedings.  Debtor was deposed by Sternat for at
least seventeen hours during the pendency of the bankruptcy.
(See above references to December 8, 2003, December 16, 2003, and
April 11, 2007 related to the State Court Litigation and March
25, 2004, July 22, 2004, September 8, 2004, September 20, 2004,
September 21, 2004, October 15, 2004, August 17, 2005, and
November 29, 2005 related to the bankruptcy proceeding).
References to the State Court Litigation dates are only those
that are known to this court and do not necessarily include all
of the discovery that has been directed toward Debtor in the
State Court Litigation.

The court notes that the November 29, 2005 discovery
request was issued after the expiration of the discovery
deadline, and during the pendency of the trial, in Adversary No.
04-3718 (complaint to determine dischargeability and discharge).
Further, as of the date of conversion of the case to a chapter 7
proceeding, June 14, 2004, the duty and responsibility to collect

and distribute assets of the estate belongs to the Chapter 7
Trustee.  This discovery request was initiated nearly one and
one-half years after the appointment of the Chapter 7 Trustee.
The Chapter 7 Trustee, W. Steve Smith, has been a trustee in the
Southern District of Texas for over twenty years and performs his
duties competently.

   Debtor seeks sanctions based upon Bankruptcy Rule 9011,
28 U.S.C. § 1927, 11 U.S.C. § 105, and the court's own inherent
power.  Bankruptcy Rule 9011(d) specifically states that the rule
is not applicable to discovery requests.  Further, Bankruptcy
Rule 9011(c)(1)(A) provides that a motion for sanctions may not
be filed until at least 21 days after service of the motion for
sanctions on the offending party.  This "safe harbor" time allows
the offending party the opportunity to withdraw or correct the
offending contention.  The notice and opportunity prior to filing
is mandatory and failure to comply precludes the granting of a
motion for Rule 11 sanctions.  *See Elliott v. Tilton,* 64 F.3d 213
(5th Cir. 1995).  The sanctionable conduct relates to a discovery
request and no safe harbor notice was given.[1]  As such,
Bankruptcy Rule 9011 is not a basis upon which this court can

---

[1] Debtor did serve a draft of a sanctions motion on Sternat on April 10,
2006, to begin the 21 day safe harbor period.  This draft only referenced
sanctions for filing RI Collections' Motion To Present Newly Discovered
Evidence or in the Alternative, Motion for Reconsideration.  The court ruled
on RI Collections' Motion To Present Newly Discovered Evidence or in the
Alternative, Motion for Reconsideration on April 12, 2006, rendering the safe
harbor period moot.

10

issue sanctions.

However, Bankruptcy Rule 7026 (g) requires the court to impose sanctions upon a signatory or party, or both, if a request for discovery is interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.[2]  28 U.S.C. § 1927 allows federal courts to assess costs and attorney's fees against an attorney who has unreasonably multiplied the proceedings in a case.  Section 105(a) of the Bankruptcy Code provides bankruptcy courts broad authority to take any action that is necessary or appropriate to prevent an abuse of process.  Additionally, the court has the inherent power to maintain order in the court, punish improper behavior, control admission to the bar and discipline attorneys.

The court finds that the evidence is clear and convincing that Sternat and McKay prepared and filed the November 29, 2005 discovery request in bad faith and for the improper purpose of harassment, resulting in increasing costs and multiplying the litigation pending before this court.  Debtor incurred attorney's fees and costs in the amount of $2,085.00 in connection with obtaining the protective order from the court.  Exhibit No. 39, Statement of Fees; Testimony of Marjorie Britt,

---

[2]  The November 29, 2005 discovery request was issued under the main case bankruptcy but did not state upon what basis it was filed nor did it refer to a particular adversary proceeding or contested matter to which it related.  Exhibits to Docket No. 102.  To the extent that the discovery request relates to a contested matter, Bankruptcy Rule 7026 is applicable pursuant to Bankruptcy Rule 9014.

Counsel for Debtor in the main case bankruptcy proceeding.  The
fees incurred relate solely to the November 29, 2005 discovery
request.  Ms. Britt charges $300 per hour and her associate
charges $150 per hour.  She testified that her firm maintains
contemporaneous time and expense records, and her Statement of
Fees was produced in that manner.  The court finds that the fees
are reasonable and necessary.  The court finds that Sternat and
McKay worked together in preparing the discovery request and
awards one half of the amount of attorney's fees as sanctions
against Sternat and one half of this amount as sanctions against
McKay.  These sanctions are imposed pursuant to the court's
inherent power, 11 U.S.C. § 105, Bankruptcy Rule 7026 and 28
U.S.C. § 1927.  The court finds that sanctioning Sternat and
McKay in the amount of $1,042.50 each is the least severe
sanction adequate to deter them from using discovery for an
improper purpose.

In connection with Adversary No. 04-3718, related to
the objection to dischargeability and discharge, Debtor contends
that Sternat filed the complaint on behalf of Rex-Tech knowing
that Rex-Tech was not the proper party in interest.  The proper
party in interest was RI Collections.  As a result, this
necessitated the filing of a Motion To Dismiss by Debtor which
increased Debtor's litigation costs.  Sternat's conduct must be
evaluated as of the time he filed the complaint.  *See Thomas v.*

12

*Capital Security Services, Inc.*, 836 F. 2d 866, 874 (5th Cir. 1988).

Sternat testified that the deadline for filing a complaint was fast approaching.  The State Court Litigation was pending and was the basis of Rex-Tech's claim against Debtor's estate.  Sternat testified that he suggested to Krell that the complaint be filed.  Krell testified that Sternat was hired to protect any interests of Petersen, Sr. in Debtor's bankruptcy proceeding and Sternat was authorized to do whatever he believed was reasonable in order to do so.  Sternat testified that he never spoke with Petersen, Jr. about the complaint and that he did not receive any instructions from Petersen, Jr.  Sternat drafted and signed the complaint.  Sternat testified that his point of reference was the State Court Litigation which was filed in the name of Rex-Tech.  He testified that he incorrectly concluded that Rex-Tech was the proper party and filed the complaint in its name on September 20, 2004.

Sternat testified that he did not learn that Rex-Tech was not the proper party until June 14 or 15, 2005, when he received a letter from Debtor's counsel referencing the Assignment by Riva of all of Rex-Tech's rights (that it acquired via foreclosure) to RI Collections.  In the State Court Litigation, Riva filed a Motion for Summary Judgment on April 25, 2005 in connection with Debtor's claims against Riva.  In the

13

pleading, which was signed by McKay, Riva asserted that Debtor did not have a claim against Riva because of the Assignment.

On June 22, 2005, about one week prior to the trial date of the adversary proceeding, Debtor filed an expedited Motion to Dismiss based upon lack of standing and requested sanctions.  Sternat filed a Response on July 1, 2005 and on July 5, 2005, the first day of trial, the court denied the dismissal motion and ordered Sternat to substitute RI Collections for Rex-Tech, which he did.  The sanctions request was denied without prejudice.

The State Court Litigation was filed against Rex-Tech in July 2003 and Rex-Tech asserted claims against the Debtor in that suit in September 2003.  The Assignment was not executed until March 25, 2004.  Rex-Tech was the proper party in the State Court Litigation until the Assignment.  Sternat filed the adversary complaint on September 20, 2004.

Petersen, Jr., McKay, and Krell were aware of the Assignment because they were involved in the transactions and the State Court Litigation.  The court finds that Sternat filed the adversary complaint without input from Petersen, Jr., McKay or Krell.  The court finds that prior to filing the complaint, Sternat did not adequately investigate what entity was the proper party to initiate the adversary proceeding.  Sternat's failure to determine the proper party constitutes negligence but it does not rise to the level of bad faith.  No sanctions will be awarded in

14

connection with the filing of Debtor's Motion to Dismiss.

Trial of the adversary proceeding was had and, after conclusion of the Debtor's case-in-chief, the court granted Debtor's oral motion for judgment as a matter of law and rendered findings of fact and conclusions of law in open court on February 27, 2006.  Thereafter, on April 12, 2006, the court supplemented its findings and conclusions in writing.  Judgment was rendered in favor of Debtor and the complaint was dismissed.  The court found that Rex-Tech and RI Collections did not have a claim against the Debtor's estate and were not creditors of Debtor. Because only creditors have standing to object to discharge or dischargeability of a debt, the court dismissed the complaint. The basis of Rex-Tech's and RI Collections' claim in Debtor's bankruptcy was the pending State Court Litigation.  The court considered and made findings on the merits of the claims against Debtor in the State Court Litigation and ruled in favor of Debtor.

On March 9, 2006, after the court's oral ruling on February 27, 2006, Sternat, on behalf of RI Collections, filed a Motion To Present Newly Discovered Evidence, Or In the Alternative, Motion for Reconsideration.  The motion alleges that on February 28, 2006, one day after the court's ruling, RI Collections "discovered" that Debtor was guilty of bankruptcy crimes in that he removed and sold the principal asset of the estate, a 760-E Drawworks, without the knowledge or consent of

15

the Chapter 7 Trustee and in violation of the court's preliminary injunction of February 3, 2005.  The preliminary injunction referenced was issued in a separate adversary proceeding seeking injunctive relief that was filed by the Chapter 7 Trustee, Adversary 05-3023, shortly after his appointment.  This adversary proceeding was settled by the parties, the court approved the compromise on November 4, 2005 and the case was closed on December 8, 2005.

RI Collections contends that these allegations, if proven, would be sufficient to preclude Debtor from obtaining a discharge, as a matter of law.  The court's dismissal of Adversary No. 04-3718 was based upon the lack of standing of RI Collections to pursue the complaint objecting to discharge and dischargeability of debt.  Regardless of the merits of the allegations, RI Collections has no standing to pursue them.  The motion does not contain any allegations concerning new facts or evidence relating to the issue of standing.[3]

The motion was signed by Sternat.  On March 13, 2006, Debtor's counsel contacted Sternat by phone and by letter and advised him that the drawworks had not been moved and explaining

---

[3] Debtor's responses to RI Collections' motion raised the fact that the motion did not address the issue of standing.  The last Reply filed by RI Collections (Docket No. 68), contains a short statement concerning standing. RI Collections contends that only a few of Rex-Tech's causes of action against Debtor were at issue in the Complaint for discharge and dischargeability of debt.  This allegation did not constitute "newly discovered evidence" nor did it establish a basis for granting reconsideration.

the facts underlying ownership of the drawworks.  Debtor's
counsel also requested that Sternat withdraw the motion or a
motion for sanctions would be filed.  Debtor's Exhibit No. 28.
Debtor's counsel renewed the request by phone and by letter on
April 10, 2006.  Debtor's Exhibit No. 32.   The motion was not
withdrawn and Debtor filed a Response, Supplemental Response, and
a Corrected Response to the motion.  Docket Nos. 63, 65 and 67.
RI Collections filed two Replies, the first of which was filed
March 20, 2006 and signed by Krell with Krell and McKay listed,
individually, with the firm of Krell & Torigian, as attorneys for
RI Collections.  McKay signed the certificate of service on this
pleading.  Docket No. 66.  The second Reply was filed April 10,
2006 and was signed by McKay, with McKay listed, individually,
with the firm of Krell & Torigian, as attorneys for RI
Collections.  Docket No. 68.

        On April 12, 2006, the same day the court supplemented
its ruling in writing, the court denied RI Collections' Motion To
Present Newly Discovered Evidence, Or In the Alternative, Motion
for Reconsideration.  No appeal has been filed.  The evidence
before the court clearly establishes that the drawworks was not
moved or sold by Debtor.  In addition, the Chapter 7 Trustee
determined in early 2005 that the drawworks was not owned by the
estate.  The Trustee determined that the estate had a contract
with the owner to refurbish the drawworks.  The Trustee rejected
the contract since the estate did not have the ability to

complete the refurbishment.  The Trustee has stated that the
litigious nature of this case has complicated and made his job as
Trustee more difficult.  Testimony of W. Steve Smith, Chapter 7
Trustee; Debtor's Exhibit No. 34, Trustee's Statement.

At the hearing on the sanctions motion, Sternat's basis
for alleging "newly discovered evidence" resulted from the
following sequence:  On February 21, 2006 Sternat contacted the
Trustee and advised him that American Block Company might be
interested in completing the refurbishment of the drawworks.  On
February 23, 2006, a representative of the Trustee's office spoke
with Chris Coyle, a former employee of Rex-Tech who was employed
at that time by American Block Company, about the refurbishment.
It was arranged for Coyle to visit the property where the
drawworks was located.  On February 24, 2006, Coyle advised the
Trustee's office that he could not locate the drawworks.  The
Trustee's representative advised Sternat of this information.
The Trustee later verified, by a site visit by his
representative, that the drawworks had not been moved.

Sternat testified that when he signed the Motion To
Present Newly Discovered Evidence, Or In the Alternative, Motion
for Reconsideration he "believed" that Debtor had moved and sold
the drawworks without the Trustee's knowledge.  There is no
evidence that, prior to the filing of the motion, Sternat, Krell
or McKay verified this information or took any steps to initiate
a reasonable inquiry into the facts.  The court finds that there

was no factual evidentiary support or legal basis for the allegations made in the motion.

On March 13, 2006, four days after the motion was filed by RI Collections, Debtor's counsel began providing information and evidence (by phone calls, letters, Responses to the motion with exhibits attached, photographs, and Trustee's Statement) to Sternat, Krell and McKay that the allegations in the motion were false.  Debtor's Exhibit Nos. 28, 29, 30, 32, and 34.  Sternat, Krell and McKay continued to pursue the matter and file pleadings.  Docket Nos. 66 and 68.

The court finds, by clear and convincing evidence, that Sternat, Krell and McKay filed and pursued in bad faith the Motion To Present Newly Discovered Evidence, Or In the Alternative, Motion for Reconsideration.  The court finds that their conduct was unreasonable and vexatious.  It resulted in increased costs and multiplied the litigation pending before this court.  Debtor incurred attorney's fees and costs in the amount of $6,508.90 in connection with the motion.  Exhibit No. 39, Statement of Fees; Testimony of Marjorie Britt.  These fees and expenses relate solely to the Motion To Present Newly Discovered Evidence, Or In the Alternative, Motion for Reconsideration.  The court finds that the fees are reasonable and necessary.

The court finds that the conduct and actions of Sternat, Krell and McKay in connection with the Motion To Present Newly Discovered Evidence, Or In the Alternative, Motion for

19

Reconsideration contributed equally to multiplying the litigation and increasing the costs.  The court awards sanctions against Sternat, Krell and McKay, each in the amount of $2,169.64.  These sanctions are imposed pursuant to the court's inherent power, 11 U.S.C. § 105, and 28 U.S.C. § 1927.  The court finds that this is the least severe sanction adequate to deter Sternat, Krell and McKay from filing pleadings with no basis in law or fact and from unreasonable, wanton and vexatious multiplication of proceedings.

In addition to recovering attorney's fees and costs attributable to investigating, researching and fighting meritless pleadings or pleadings filed for an improper purpose, a party seeking sanctions can also recover fees and costs incurred in researching, preparing, and prosecuting its sanctions motion. Debtor incurred attorney's fees in connection with the motion for sanctions that is before the court.  Prior to the start of the hearing on the instant motion, these fees were in the amount of $9,900.00.  Exhibit No. 39, Statement of Fees; Testimony of Marjorie Britt.  These fees relate solely to the researching, preparing, and prosecuting of Debtor's motion for sanctions.  The court finds that the fees are reasonable and necessary.

The court finds that Respondents' bad faith conduct necessitated the filing of the motion for sanctions.  Without the filing of the motion, the court finds that Respondents' harassment of the Debtor through its abuses of the bankruptcy process would have continued in the same persistent and vexatious

20

manner.  Respondents' improper actions have resulted in a delay
of years and a cost of thousands of dollars in this Debtor's
obtaining the relief accorded a Debtor in bankruptcy, that of a
"fresh start."  Sternat, Krell and McKay have failed to maintain
a minimum standard of professional responsibility.  The court
sanctions each in the amount of $3,300.00, pursuant to the
court's inherent power, 11 U.S.C. § 105, and 28 U.S.C. § 1927.

Respondents contend that the Debtor's Motion for
Sanctions is not timely because it was filed three months after
the conclusion of the discharge and dischargeability of debt
adversary proceeding.  The doctrine of laches bars recovery when
a claim holder sits on his rights for an unreasonable time to the
prejudice of the opposing party.  In deciding whether laches
applies a court looks at all of the facts and circumstances of
each case and weighs the equities of the parties.  *In re
Cochener*, 382 B.R. 311 (S.D. Tex 2007).

No proof was offered by Respondents to establish that
Debtor unreasonably delayed filing his motion for sanctions or
that it was for an inexcusable length of time.  Respondents did
not submit any evidence to establish that as a result of the
delay they were unduly prejudiced or were unable to fully and
fairly present a defense to the motion for sanctions.  The court
finds that the Debtor's Motion for Sanctions is not barred by
laches.

21

<u>Conclusions of Law</u>

Rule 9011, "Signing of Papers; Representations to the Court; Sanctions; Verification and Copies of Papers," provides, in pertinent part:

(a) Signature.  Every petition, pleading, written motion, and other paper, except a list, schedule, or statement, or amendments thereto, shall be signed by at least one attorney of record in the attorney's individual name. A party who is not represented by an attorney shall sign all papers. Each paper shall state the signer's address and telephone number, if any. An unsigned paper shall be stricken unless omission of the signature is corrected promptly after being called to the attention of the attorney or party.

(b) Representations to the Court.  By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,
   (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
   (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
   (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
   (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

(c) Sanctions.  If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are

22

responsible for the violation.
      (1) How Initiated.
         (A) By motion.  A motion for sanctions under this
      rule shall be made separately from other motions
      or requests and shall describe the specific
      conduct alleged to violate subdivision (b). It
      shall be served as provided in Rule 7004.  The
      motion for sanctions may not be filed with or
      presented to the court unless, within 21 days
      after service of the motion (or such other period
      as the court may prescribe), the challenged paper,
      claim, defense, contention, allegation, or denial
      is not withdrawn or appropriately corrected,
      except that this limitation shall not apply if the
      conduct alleged is the filing of a petition in
      violation of subdivision (b). If warranted, the
      court may award to the party prevailing on the
      motion the reasonable expenses and attorney's fees
      incurred in presenting or opposing the motion.
      Absent exceptional circumstances, a law firm shall
      be held jointly responsible for violations
      committed by its partners, associates, and
      employees.

   (d) Inapplicability to Discovery.  Subdivisions (a) through
(c) of this rule do not apply to disclosures and discovery
requests, responses, objections, and motions that are subject to
the provisions of Rules 7026 through 7037.

      Subsection (c)(1)(A) provides that a motion for

sanctions may not be filed until at least 21 days after service

of the motion for sanctions on the offending party.  This "safe

harbor" provision contemplates that service will give the parties

at whom the motion is directed an opportunity to withdraw or

correct the offending contention.  The plain language of the rule

indicates that this notice and opportunity prior to filing is

mandatory. Failure to serve a motion for Rule 11 sanctions prior

to filing the motion deprives defense counsel of the safe harbor

opportunity to withdraw or correct the offending contention and,

23

thus, precludes the granting of a motion for Rule 11 sanctions.
*See Elliott v. Tilton,* 64 F.3d 213 (5th Cir. 1995).  As indicated
above (in footnote 1) counsel for Debtor attempted to satisfy
this requirement, and did so in spirit, but was preempted by this
court's order on the Motion To Present Newly Discovered Evidence,
Or In the Alternative, Motion for Reconsideration.

    Section 105(a) of the Bankruptcy Code[4] provides
bankruptcy courts broad authority to "take any action that is
necessary or appropriate 'to prevent an abuse of process.' "
*Marrama v. Citizens Bank of Massachusetts,* --- U.S. ----, ----,
127 S.Ct. 1105, 1112, 166 L.Ed.2d 956 (2007).  Courts have held
that § 105 is broad enough to empower bankruptcy courts to
sanction attorneys in conjunction with their inherent power "to
implement the Bankruptcy Code and prevent abuses of bankruptcy
process, powers inherent to district courts."

    A court has the inherent power to maintain order in
the court, punish improper behavior, control admission to the bar
and discipline attorneys.  A court may call upon its inherent
powers to assess attorney's fees against a party who has "acted

---

[4]   Section 105(a) provides:
    [t]he court may issue any order, process, or judgment
    that is necessary or appropriate to carry out the
    provisions of this title.  No provision of this title
    providing for the raising of an issue by a party in
    interest shall be construed to preclude the court
    from, sua sponte, taking any action or making any
    determination necessary or appropriate to enforce or
    implement court orders or rules, or to prevent an
    abuse of process.

24

in bad faith, vexatiously, wantonly, or for oppressive reasons."
*See Chambers v. NASCO, Inc.,* 501 U.S. 32, 111 S.Ct. 2123, 115
L.Ed.2d 27 (1991); *Matter of Case,* 937 F.2d 1014, 1023 (5th
Cir.1991); *In re Osborne,* 375 B.R. 216, 226 (Bankr.M.D.La.2007);
*Matter of Volpert,* 110 F.3d 494, 500 (7th Cir. 1997); *In re
Rainbow Magazine, Inc.,* 77 F.3d 278, 284 (9th Cir.1996); *In re
Courtesy Inns, Ltd., Inc.,* 40 F.3d 1084, 1089 (10th Cir.1994).

Inherent powers may be exercised only if essential to
preserve the authority of the court, and the sanction imposed
must employ the least possible power adequate to the purpose to
be achieved. *See Natural Gas Pipeline Company of America v.
Energy Gathering Inc.,* 86 F.3d 464, 467 (5th Cir.1996).
Sanctions imposed in any particular case must be "tailored to fit
the particular wrong." *Topalian v. Ehrman,* 3 F.3d 931, 936 (5th
Cir.1993).

Bankruptcy Rule 7026, "General Provisions Governing
Discovery," provides that Federal Rule of Civil Procedure 26
applies in adversary proceedings. Bankruptcy Rule 9014 provides
that Bankruptcy Rule 7026 applies in contested matters. In 2005,
Federal Rule of Civil Procedure 26(g)[5] provided:

(g) Signing of Disclosures. Discovery Requests,
Responses, and Objections.

---

[5] As the discovery was propounded on November 29, 2005, the court cites
the rule in effect at that time. The court notes that FRCP 26 has not changed
substantively since that time.

(1) Every disclosure made pursuant to subdivision (a)(1) or subdivision (a)(3) shall be signed by at least one attorney of record in the attorney's individual name, whose address shall be stated.  An unrepresented party shall sign the disclosure and state the party's address.  The signature of the attorney or party constitutes a certification that to the best of the signer's knowledge, information, and belief, formed after a reasonable inquiry, the disclosure is complete and correct as of the time it is made.

(2) Every discovery request, response, or objection made by a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name, whose address shall be stated.  An unrepresented party shall sign the request, response, or objection and state the party's address.  The signature of the attorney or party constitutes a certification that to the best of the signer's knowledge, information, and belief, formed after a reasonable inquiry, the request, response, or objection is:

    (A) consistent with these rules and warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law;

    (B) not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase the cost of litigation; and

    (C) not unreasonable or unduly burdensome or expensive, given the needs of the case, the discovery already had in the case, the amount in controversy, and the importance of the issues at stake in the litigation.

If a request, response, or objection is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the party making the request, response, or objection, and a party shall not be obligated to take any action with respect to it until it is signed.

(3) If without substantial justification a certification is made in violation of the rule, the court, on motion or on its own, shall impose upon the person who made the certification, the party on whose behalf the disclosure, request, response, or objection is made, or both, an appropriate sanction, which may include an order to pay the amount of the reasonable expenses incurred because of the violation, including a reasonable attorney's fee.

    Appropriate factors for the Bankruptcy Court to

26

consider in determining the sanction to impose include: (1) the precise conduct being punished; (2) the precise expenses caused by the violation; (3) the reasonableness of the fees imposed; and (4) the least severe sanction adequate to achieve the purpose of the rule relied upon to impose the sanction. *See Topalian,* 3 F.3d at 936-37; *Crowe v. Smith,* 151 F.3d 217, 226 (5th Cir. 1998), *cert. denied,* 526 U.S. 1158, 119 S.Ct. 2047, 144 L.Ed.2d 214 (1999); *Chaves v. M/V Medina Star,* 47 F.3d 153, 156 (5th Cir.1995).

In connection with the standard of proof to apply in determining if conduct is sanctionable, the court in *In re Cochener*, 382 B. R. 311 (S.D. Tex. 2007) concluded that the appropriate standard of proof for imposing monetary sanctions in the form of attorney's fees pursuant to the court's inherent authority is the clear and convincing evidence standard.  That court noted that although the Fifth Circuit applied the clear and convincing evidence standard of proof to cases in which attorneys have been sanctioned with suspension and/or disbarment, it had not expressly decided which standard of proof courts were to apply when they considered imposing other types of inherent power sanctions.  The *Cocherner* court reached its conclusion after a thorough analysis of cases that were cited approvingly by the Fifth Circuit wherein the standard of proof was held to be clear and convincing.  *See In re Cochener*, 382 B. R. at 327.  This

27

court applies the clear and convincing standard of proof.

28 U.S.C. § 1927 allows federal courts to assess costs and attorney's fees against an attorney who has unreasonably multiplied the proceedings in a case.[6]  Under the plain language of the statute, three essential requirements must be satisfied with respect to an award of sanctions under § 1927:(1) the attorney must engage in "unreasonable and vexatious" conduct; (2) the "unreasonable and vexatious" conduct must be conduct that "multiplies the proceedings;" and (3) the dollar amount of the sanction must bear a financial nexus to the excess proceedings, i.e., the sanction may not exceed the "costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927.  *See Stewart v. Courtyard Management Corp.,* 155 Fed.Appx. 756, 760, 2005 WL 3114914 at *4 (5th Cir. 2005) (citing *Peterson v. BMI Refractories,* 124 F.3d 1386, 1396 (11th Cir.1997)).

Since section 1927 sanctions are penal in nature, it is strictly construed.  *See Travelers Insurance Co. v. St. Jude Hosp. of Kenner, La., Inc.,* 38 F.3d 1414, 1416 (5th Cir.1994).

---

[6] 28 U.S.C. § 1927 provides:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Proving that an attorney's behavior was both "vexatious" and "unreasonable" requires "evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court." *Edwards v. General Motors Corp.,* 153 F.3d 242, 246 (5th Cir. 1998).

The doctrine of laches bars recovery when a claim holder sits on his rights for an unreasonable time to the prejudice of the opposing party. In deciding whether laches applies a court looks at all of the facts and circumstances of each case and weighs the equities of the parties. *In re Cochener*, 382 B.R. 311 (S.D. Tex 2007).

To prevail on a claim of laches, a party must prove, by a preponderance of the evidence, that there was a delay in asserting a right, that the delay was for an unreasonable and inexcusable length of time, and that the delay caused undue prejudice. *Goodman v. Lee*, 78 F.3d 1007, 1014 (5th Cir.), *cert. denied sub nom. Lee v. Goodman*, 519 U.S. 861, 117 S.Ct. 166, 136 L.Ed 2d 108 (1996). Respondents have failed to sustain their burden of proof on this issue.

Based on the foregoing, a separate conforming Judgment will be entered.

Signed at Houston, Texas on March 31, 2008.

_____
LETITIA Z. CLARK
UNITED STATES BANKRUPTCY JUDGE